[Civ. No. 20893. Second Dist., Div. Three. July 8, 1955.]

In re MAYELLEN APARTMENTS, INC. (a Corporation), in Process of Voluntary Winding Up. MAYELLEN APARTMENTS, INC. (a Corporation), Respondent, v. MARIO J. M. PACMAN et al., Appellants.

Arthur E. Briggs for Appellants.

Nathan Newby, Jr., for Respondent.

VALLÉE, J.—This proceeding was commenced on February 17, 1954, by Mayellen Apartments, Inc., a corporation, for judicial supervision of winding up its affairs and its dissolution pursuant to the provisions of sections 4607-4619 of the Corporations Code.

Mayellen Apartments, Inc., is a California corporation organized January 31, 1948, for the purpose of owning and operating an apartment house with 16 apartments in Los Angeles. It is authorized to issue 16 classes of stock, each class having one share. The holder of a share of stock has the exclusive right to use and occupy one of the 16 apartments, which apartment is named in the certificate evidencing the share of stock so held.[1] Each of the four appellants owns a share of stock. The articles of incorporation provide that any shareholder desiring to sell his share of stock shall first make it available to a co-owner, then to the corporation, then to other shareholders, each with the right to purchase at par plus $100 and improvements, or less if acceptable to the seller. They further provide that no sale or other disposition of all or substantially all of the property of the corporation shall be made unless approved by the vote of or written consent of all the shareholders entitled to exercise the entire voting power of the corporation.

About August 24, 1953, the corporation elected to wind up its affairs and voluntarily dissolve. Twelve of the 16 shareholders consented in writing to the election. (See Corp. Code, § 4600.) The reasons for the dissolution are stated in the margin.[2] Thereafter the required steps precedent to judicial supervision of winding up and dissolution were taken.

The minority shareholders, who are the appellants here,

[1] The articles provide: "The holders of each class of stock shall be entitled to the use and exclusive right to occupy the apartments set opposite the class of stock as follows: . . . Said apartments being located in the structure at 1243 West 24th Street, and on the real estate above described in Article Two hereof, as long as said occupancy does not violate any laws regulating the occupancy of apartment houses and/or the apartments located therein."

[2] "That a schism has arisen between the majority stockholders and the minority stockholders which has prevented the harmonious administration of the affairs of the corporation and disrupted the normal and peaceful living of the occupants of the apartment house building owned by the Petitioner, said occupants being the shareholders; that because of said disunity among the stockholders, individual stockholders who desired to sell their respective shares of stock have been unable to secure buyers because of the fact that prospective buyers do not desire to occupy the premises where a spirit of bickering and disunity prevails."

answered the petition for judicial supervision, objecting thereto. Among other things, they prayed that if the court took jurisdiction it ascertain the value of the share of each shareholder and they be given their right to purchase the shares of the majority in accordance with the articles. On April 7, 1954, after a hearing at which appellants were represented, an order was made continuing the hearing on the petition to April 21 on condition that if appellants on or before 5 p.m. on April 14 deposited $39,075 with the county clerk for the purpose of purchasing the shares of the majority, and if on or before 5 p.m. on April 20 the majority consent in writing to the purchase for that sum, then the $39,075 would be held for distribution to the majority. The minority shareholders did not deposit the $39,075 with the county clerk. On July 20, 1954, an order was made adjudging that the court take "jurisdiction of and supervision of winding up proceedings and may make orders and adjudge as to any and all matters concerning the winding up of the affairs of the corporation." This order became final. On August 13, 1954, after a hearing at which appellants were represented, an order was made approving the sale of the assets of the corporation to one Garrett for $50,500.

On July 26, 1954, Pacman, one of the minority shareholders, filed an action, Number 631227, in the superior court in which he sought a decree ordering the officers of the corporation "to cause a Revocation of ELECTION TO WIND UP" and "to cancel attempted sale of all corporate assets" or, in the alternative, for general and special damages. On September 15, 1954, the court in this proceeding issued a preliminary injunction restraining Pacman from prosecution action 631227 until the final determination of this matter.

On September 16, 1954, Pacman regularly moved the court for an order vacating the order approving the sale of the assets and subjecting the corporation "to Supervision of Court of Winding Up Proceedings" on the ground the court was without jurisdiction to make it. All appellants were represented at the hearing. The motion was denied.

The minority shareholders appeal from the order denying the motion to vacate the order approving the sale of the assets of the corporation and from the order granting the preliminary injunction.

Appellants assert that because of the provisions of the articles the court was without jurisdiction of the proceeding and that the proceeding is an attempt by the majority share-

holders and the officers of the corporation to take their property from them without due process of law. They say their property consists of the right, as shareholders, to the use and exclusive occupancy of their apartments as provided in the articles of incorporation. They say further the proceeding constitutes a breach of the contract between the corporation and its shareholders and a fraud on their rights as shareholders in that it was agreed in the articles that no sale of the assets shall be made unless all the shareholders consent thereto in writing.[3]

A corporation may elect to wind up its affairs and voluntarily dissolve by the vote or written consent of shareholders representing 50 per cent or more of the voting power. (Corp. Code, § 4600.)[4] When voluntary proceedings for winding up or dissolution have been commenced the board of directors continues to act as a board and has full power to wind up and settle its affairs. (Corp. Code, § 4800.) After the commencement of such proceedings the directors have power "[t]o sell at public or private sale, exchange, convey, or otherwise dispose of, all or any part of the assets of the corporation, upon such terms and conditions and for such considerations as such board deems reasonable or expedient, and to execute bills of sale and deeds of conveyance in the name of the corporation" and "[i]n general, to make contracts and to do any and all things in the name of the corporation which may be proper or convenient for the purposes of winding up, settling, and liquidating the affairs of the corporation." (Corp. Code, § 4801, subds. (g), (h).) When judicial supervision is invoked the board of directors acts under the supervision of the court. (Corp. Code, §§ 4607-4619.) Section 4607 reads:

"If a corporation is in the process of voluntary winding up, the superior court of the county in which the principal office of the corporation is located, upon the petition of (a) the corporation, or (b) the holders of 5 percent or more of the number of its outstanding shares, or of (c) three or more creditors, and

---

[3]The articles provide: "No sale, lease, conveyance, transfer, exchange or other disposition (except by way of hypothecation) of all or substantially all of the property and assets of this Corporation shall be made unless approved by the vote of or written consent of all of the shareholders of this Corporation entitled to exercise the entire voting power of this Corporation, except that the Corporation may lease individual apartments, the control of which the Corporation has acquired under subparagraphs (e) and (f) of Article FIVE aforesaid or under the power herein granted."

[4]All section references are to the Corporations Code, unless otherwise noted.

upon such notice to the corporation and to other persons interested in the corporation as shareholders or creditors as the court may order, may make orders and adjudge as to any and all matters concerning the winding up of the affairs of the corporation.''

The code provides that the court has jurisdiction to determine the rights of all shareholders in and to the assets of the corporation, the settlement or determination of all claims of every nature against the corporation or any of its property, and the amount of money or assets available for distribution among shareholders. (Corp. Code, §§ 4609, 4610.)

The Constitution provides that the superior courts shall have original jurisdiction in all civil cases and proceedings and of all such special cases and proceedings as are not otherwise provided for. (Const., art. VI, § 5.) █ There can be no doubt that section 4607 is valid and that the superior court had jurisdiction to entertain this proceeding. (*Wright* v. *Central Calif. Colony Water Co.*, 67 Cal. 532, 533 [8 P. 70], *Wickersham* v. *Brittan*, 93 Cal. 34, 39 [28 P. 792, 29 P. 51, 15 L.R.A. 106], in which it was held the superior court has jurisdiction to entertain a proceeding under former Civil Code, sections 312 and 315 to determine the validity of an election to the board of directors of a corporation; *Whitehead* v. *Sweet*, 126 Cal. 67 [58 P. 376], holding the superior court has jurisdiction of a proceeding to oust corporate directors; *Los Angeles* v. *Owens River Canal Co.*, 120 Cal.App. 380 [7 P.2d 1064], in which it was held the superior court has jurisdiction to entertain a proceeding to compel the holding of an annual shareholders' meeting for the purpose of electing directors of a corporation; *DeGarmo* v. *Goldman*, 19 Cal.2d 755 [123 P.2d 1], *California Fruit Growers' Assn.* v. *Superior Court*, 8 Cal.App. 711 [97 P. 769], holding the superior court has jurisdiction to entertain a proceeding to remove directors of a corporation for fraudulent practices. *Cf. Smith* v. *San Francisco & N. P. Ry. Co.*, 115 Cal. 584 [47 P. 582, 56 Am.St.Rep. 119, 35 L.R.A. 309], an action brought for the purpose of having it declared that one person, rather than another, was elected director of a corporation.)

Corporations Code, sections 4607-4619, are a reenactment of former Civil Code, section 403.[5] Speaking of former Civil Code, section 403, the court in *In re San Joaquin L. & P. Corp.*, 52 Cal.App.2d 814, stated (p. 824 [127 P.2d 29]) :

---

[5]Stats. 1931, ch. 862, p. 1825; Stats. 1933, ch. 533, § 81, p. 1408; Stats. 1947, ch. 1038, p. 2385.

"A petition was filed as authorized by section 403 of the Civil Code and the superior court then had 'power to order and adjudge as to any or all matters in and for the winding up of the affairs of the corporation,' including '(3) the determination of the rights of shareholders . . . in and to the assets of the corporation.' An absolute right to petition for such supervision and direction is impliedly given and we think it follows that the court not only has the power to order and adjudge as to all matters thus presented, but that the duty of so doing is imposed upon the court."

*Daugherty* v. *Superior Court,* 56 Cal.App.2d 851, says (p. 856 [133 P.2d 827]):

"The latter section [former Civil Code, § 403] gives to a superior court power to order and adjudge as to any and all matters in connection with the winding up of a corporation, including many specified matters which involve the adjudication of disputes which may arise between any of the interested parties."

(See also *Hare & Chase* v. *Bankers' Discount Corp.,* (Ohio App.) 56 N.E.2d 943, 949.)

The Constitution authorizes the Legislature to provide for the formation, organization, and regulation of private corporations and to prescribe their powers, rights, duties, and liabilities and the powers, rights, duties and liabilities of their officers and shareholders. (Const., art. XII, § 1.) The power of the Legislature under the constitutional reservation of power to provide for voluntary dissolution of corporations and for judicial supervision of winding up, notwithstanding contractual rights of shareholders created by the articles, is not open to question. The relation of a shareholder to the corporation is one of contract. (12 Cal.Jur.2d 748, § 186.) The contract is defined by the articles, the bylaws and applicable statutes. (*Thomas* v. *Wentworth Hotel Co.,* 158 Cal. 275, 280 [110 P. 942, 139 Am.St.Rep. 120]; *Fawkes* v. *Farm Lands Inv. Co.,* 112 Cal.App. 374, 378-379 [297 P. 47].) The provisions of the Constitution and sections 4607-4619 of the Corporations Code form part of the contract between the corporation and its shareholders. (*Schroeter* v. *Bartlett Syndicate Bldg. Corp.,* 8 Cal.2d 12, 14 [63 P.2d 824]; *DeMello* v. *Dairyman's Co-op. Creamery,* 73 Cal.App.2d 746, 750 [167 P.2d 226]; *Silva* v. *Coastal Plywood & Timber Co.,* 124 Cal.App.2d 276, 278 [268 P.2d 510].) Appellants' contracts with the corporation were subject to the constitutional reservation of power and to all laws relative to

dissolution of a corporation. An analogous state of facts was before the court in *Silva* v. *Coastal Plywood & Timber Co., supra,* 124 Cal.App.2d 276. There the articles provided that only one share of stock could be issued to or owned by any shareholder, who had to be an active employee of the corporation or a person acceptable to the board of directors as a future active employee. There were extensive provisions in the by-laws having to do with the minimum and maximum wages to be paid shareholder employees and job tenure. The corporation ran into difficulties and the board of directors called a shareholders' meeting for the purpose of approving an amendment to the articles so that shares of stock could be sold without restriction and that any person could own any number of shares. The suit was to enjoin the proposed act of the board. The court, speaking through Mr. Justice Peek, said (p. 279):

"Plaintiffs do not contend, nor could they, that their rights are property rights existing separate and apart from their contract rights as shareholders. Without that element it cannot be said that there has been such impairment of their contract as would come within constitutional prohibitions. Mere interference with their contract rights as shareholders cannot overcome the reserved right of the state to exercise what it determines to be in the public welfare under the power reserved to it in the Constitution. Thus the problem is not as to whether 'vested' rights or the 'fundamental nature' of the corporation will be affected, but whether or not the amendment falls within the scope of the applicable statute. Inherent in the statute is the possibility of change. There can be no other reason for the reservation. The wisdom of enactment is the concern of the Legislature, not the courts."

*Schroeter* v. *Bartlett Syndicate Bldg. Corp., supra,* 8 Cal.2d 12, was an action by a shareholder to recover assessments paid by him on his stock. At the time the plaintiff's stock was issued, the law permitted the levy and collection of assessments. At the time the assessment was made, the law had been changed to provide that shares were assessable only when the articles expressly conferred such authority. The articles did not, at that time, confer the authority. It was contended by the corporation that its right to assess had to be measured by the law existing at the time the stock was issued, that to hold otherwise "would be a violation of article I, section 10, and the Fourteenth Amendment of the United States Constitution as

well as section 16 of article I of the California Constitution" and would impair the obligation of the contract of the corporation with its stockholders within the constitutional inhibition. Answering, the court stated (p. 14):

"The fallacy in this reasoning is that it does not take into consideration section 1 of article XII of the California Constitution, which reads: . . . This provision was also a part of the contract between the corporation and its stockholders. . . . The state reserved the right to amend or repeal the then existing statute authorizing the levy of assessments and there was no impairment of the obligation of contract by the legislative exercise of this right. The amended statute did not take from the corporation the right to assess its stockholders. It only requires, as a basis for the assessment of corporate stock, that the articles of incorporation must expressly confer authority therefor. No limitation was placed upon the corporation to amend its articles of incorporation. No obligation of contract was impaired; no vested right was interfered with."

In *DeMello* v. *Dairyman's Co-op. Creamery, supra,* 73 Cal.App.2d 746, it was held that the reorganization of a cooperative business association into a nonprofit cooperative marketing association did not violate the vested rights of dissenting members where it was necessitated by a membership structure resulting in dissension, hampered operations, and unnecessary payment of taxes, and where such members could remain with a full proportionate interest in the assets or withdraw and receive a cash payment equal to the full amount recoverable under the former association's bylaws and an additional credit for the balance of the value of their interest.

One of the questions in *Stubbs* v. *Jones,* 121 Cal.App.2d 218 [263 P.2d 100], was whether a corporation had been validly dissolved. It was contended it had not been because of the existence of a trust indenture executed by the sole shareholder by which the assets of the corporation were to be controlled and distributed by a trustee. Holding the corporation had been validly dissolved, the court quoted from 16 Fletcher Cyclopedia of Corporations, perm. ed., section 8022 (p. 222):

" 'The general rule is that where a statute confers power on a majority, or a certain per cent, of the stockholders to dissolve, the right is absolute, so far as the motives of the majority are concerned, in the absence of actual fraud, and not subject to judicial review on behalf of minority stockholders.' "

The court continued (p. 223):

"The statutes lay down no conditions for the dissolution of

corporations other than that the specific statutory requirements be met, and they declare that when that has been done and when winding up has been completed, and the certificate to that effect has been filed where required, the 'corporate existence shall cease.' (Corp. Code, § 5201.)''

■ The exercise of the court's jurisdiction in supervising the winding up and dissolution of the corporation does not violate any vested contract or property right of appellants. Their contract and property rights are subject to all statutory provisions relative to winding up and dissolution of the corporation.

It is argued that section 3901 prohibits the sale of all the property and assets of the corporation without the approval of all the shareholders. Section 3901 provides that a corporation shall not sell or otherwise dispose of all or susbtantially all of its property and assets except by vote or written consent of the shareholders entitled to vote, with the proviso that ''the articles may require for such approval the vote or consent of a larger proportion of the shareholders or the separate vote of a majority or a larger proportion of any class or classes of shareholders.'' As we have noted, the articles of respondent provide that no sale or other disposition of all or substantially all of its property and assets shall be made unless approved by the vote or written consent of all the shareholders. ■ It is manifest that section 3901 applies to an existing, going corporation and not to a corporation in process of winding up its affairs and dissolution. Section 4801, which is found in part 9, division 1 of title 1 of the Corporations Code, treating of ''Winding Up and Dissolution,'' imposes no restriction on the power of the directors to sell all the property and assets of a corporation in the process of winding up its affairs and dissolution, except in case a sale for profit is made for any consideration other than money. Section 4801, and not section 3901, controls in the present instance. ■ The court had the power under section 4801 to order sale of the assets without the consent of all the shareholders.

Appellants claim the evidence shows the entire proceeding for dissolution was conceived in fraud, and for that reason the order denying their motion to vacate the order approving the sale of the assets should be reversed. The claim of fraud is based on the assertion that the corporation commenced the process of dissolution and the proceeding for judicial supervision ''solely for the purpose of avoiding its contractual obli-

gations to" appellants for the "use and exclusive occupancy" of their apartments. We find no support in the record for this contention. This question was made an issue by the petition for judicial supervision and the answers of appellants thereto. The court, in ordering that it take jurisdiction, necessarily found the proceedings prior to the filing of the petition were fair and regular and no fraud had been practiced. No appeal was taken from that order and it became final. Thereafter the corporation petitioned for an order approving the sale of its assets to Garrett. Appellants answered the petition, objecting thereto, and again pleaded fraud. Following a hearing at which appellants were represented, the court found the sale of the assets to Garrett was for the best interest of the corporation, two-thirds of the shareholders had consented to the sale and approved the same, and an order ratifying and approving the sale followed. No appeal was taken from that order and it became final. ■ The present appeal is from an order denying Pacman's motion to vacate the order approving the sale. Having had their day in court on the hearing of the petition for judicial supervision and on the hearing of the petition for approval of the sale of the assets, and having failed to appeal from either of those orders, appellants cannot now raise the question of fraud.

■ It is argued that the corporation will receive less from the sale approved than it would have realized had the sale been made to appellants. The obvious answer is that shortly after the petition for judicial supervision was filed and before an order was made on the petition, appellants were given the opportunity to purchase the shares of the majority. They failed to take advantage of the opportunity and did not deposit the necessary funds with the county clerk. They cannot complain that the sale was not made to them. There is no showing that the sale price approved by the court is not the fair market value of the assets.

■ The contention that the court was without jurisdiction to enjoin the prosecution of action 631227 is without merit. That is an action by appellant Pacman against the corporation and its officers "to cause a Revocation of ELECTION TO WIND UP," "to cause a Revocation of inequitable amendments," "to cancel attempted sale of all corporate assets," "to henceforth abide by the ARTICLES OF INCORPORATION and the BY-LAWS," or, in the alternative, for general and special damages. The complaint alleges substantially the same matters as are alleged in appellants' answers to the petition for

judicial supervision and in their objections to the petition for sale of the assets. Section 4616 specifically provides:

"The jurisdiction of the court includes staying the prosecution of any suit, proceeding, or action against the corporation and requiring the parties to present and prove their claims in the manner required of creditors."

It is manifest the court had jurisdiction to stay the prosecution of the action. It was entirely competent for the Legislature to provide for the suspension of rights which claimants would otherwise have to pursue and require them to assert their rights, if at all, in the dissolution proceeding. (*Hare & Chase* v. *Bankers' Discount Corp., supra* (OhioApp.), 56 N.E.2d 943, 949-950.)　　The purpose of this limitation of remedies is to preserve the assets for the payment of all the creditors ratably rather than to permit one creditor to seize the assets and obtain an unfair preference, and to protect the orderly liquidation of the corporation from suits by dissatisfied shareholders. (Ballentine, Corporation, 731 § 317. See American Bar Association Committee on Business Corporations, Model Business Corporation Act (Rev. 1950) § 80(b) comment; 9 Uniform Laws Anno., Model Business Corporation Act, § 50.) All the matters complained of in action 631227 are subject to determination in this proceeding.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 29, 1955, and appellants' petition for a hearing by the Supreme Court was denied September 1, 1955.