[Civ. No. 3240. Fourth Dist. Dec. 3, 1943.]

GEORGE A. ZIMMERMAN, Appellant, v. TIDE WATER ASSOCIATED OIL COMPANY (a Corporation) et al., Respondents.

Ambrose Gherini, Arthur B. Dunne and Dunne & Dunne for Appellant.

Robert M. Searls, Clifford J. MacMillan and W. F. Kiessig for Respondents.

BARNARD, P. J.—This is an action to compel distribution in kind on the dissolution of a corporation. For convenience, the defendants will be referred to, respectively, as Tide Water

and West Coast. West Coast owned land in Orange County on which were some producing oil wells. At all times in question it had no issued common stock and its entire capital stock consisted of 10,408 shares of preferred stock with a par value of $60 per share. Tide Water owned 8,434 shares of this stock and 150 shares were owned by the plaintiff.

On September 30, 1940, Tide Water and West Coast entered into a written agreement which recited that Tide Water owned about 81 per cent of the preferred capital stock of West Coast; that as of July 31, 1940, West Coast had assets consisting principally of oil properties, equipment, cash and accounts receivable of a total book value of $742,053.34, based upon cost and exclusive of certain "appreciation of operated oil properties," and had liabilities, exclusive of capital stock, of $14,458.29; that as of said date the depreciated book value of the oil properties and equipment based upon cost amounted to $190,926.92 and based upon cost plus certain "appreciation" amounting to $297,809.51; that on August 1, 1940, said properties and equipment were appraised by a certain independent petroleum engineer at $260,394; and that on October 1, 1939, they were appraised by another independent engineer at $230,000. It was then recited that in order to effect a distribution of West Coast's property, in complete liquidation of West Coast, the following plan was adopted: West Coast was to convert into cash all of its assets other than its oil property and equipment and pay all its known debts other than capital stock liability; West Coast should then transfer and distribute all of its property and assets by paying to its stockholders, other than Tide Water, the cash value of their shares, taking oil property and equipment at $260,394 less depreciation after August 1, 1940, and by turning over to Tide Water all of the oil property and equipment plus any amount of cash necessary to make up its share, taking the oil property and equipment at the same value. It was then provided that West Coast should be dissolved and that liquidation, distribution, transfer and dissolution should be completed on or before December 31, 1943.

On October 31, 1940, the directors of West Coast adopted a resolution declaring that it was for the best interest of the stockholders that it be completely liquidated, approving this plan of liquidation, directing that for the purpose of carrying out the plan its assets, other than oil properties and

equipment, be turned into cash; that stockholders, other than Tide Water, be paid cash in complete cancellation of their shares of stock; and that its oil properties and equipment be transferred to Tide Water with any balance of cash necessary to make up its share; authorizing its officers to do these things and sign any necessary conveyances, and calling a meeting of the stockholders for November 15, 1940, for the purpose of ratifying and confirming the action taken by the board of directors in this regard, and for the further purpose of "considering, and if deemed advisable authorizing, the voluntary winding-up and dissolution of this Company." The secretary was then directed to mail to each of the stockholders a notice of this meeting, with a copy of the plan of liquidation, a copy of the resolution adopted by the directors, and copies of the appraisements above referred to.

On November 15, 1940, the stockholders adopted resolutions directing its officers to file a certificate of dissolution, approving the plan referred to, authorizing the conveyance to Tide Water of all West Coast's oil properties and equipment in pursuance to this plan, and further providing that should the holders of any of the shares of stock refuse to accept their distributive shares "in cash or property" the company should deposit such distributive shares in a certain bank for the benefit of such persons.

The plaintiff did not accept the amount offered him for his stock and brought this action on November 24, 1941. In addition to the matters above stated the complaint alleged, among other things, that all of West Coast's preferred stock was of the same class and all of said shares had the same rights and privileges; that under West Coast's articles of incorporation and the issued stock certificates all of the holders were entitled to participate equally in the earnings and assets, whether on dissolution or otherwise, in proportion to the shares held; that at all times material the majority of the directors of West Coast were elected by Tide Water as majority stockholder of West Coast and were officers and employees of Tide Water; that in doing the things in question these directors acted as the agents of Tide Water and for its benefit; that with respect to the matters here in question Tide Water controlled West Coast and caused these things to be done for the interest of Tide Water and to the exclusion of the other stockholders of West Coast; that the assets of West

Coast consisted mainly of oil properties with producing wells, and the value thereof was and is uncertain; that the values referred to in the plan of liquidation were stated by engineers employed by Tide Water and the plaintiff has in no way consented to or acquiesced in any matters stated in said plan; that at the meeting of the stockholders on November 15, 1940, 9,147 shares of the issued stock were voted in favor of said dissolution, of which 8,434 were owned by Tide Water; that none of plaintiff's shares were voted in favor of any of said resolutions and the plaintiff has at no time consented to or acquiesced in the said plan of liquidation or any of said resolutions or in any action taken in pursuance thereof; that on November 15, 1940, the president and secretary of West Coast executed and filed a certificate of election to wind up and dissolve West Coast; that thereafter purporting to act in pursuance of said plan of liquidation West Coast offered to its stockholders, other than Tide Water, $75.22744 per share in liquidation and cancellation of said shares; that this was a figure fixed by Tide Water; that West Coast purported to dispose of its assets other than oil properties and equipment for cash with which to make such payments in part; that plaintiff is informed and believes that said assets were not sold for cash but were turned over to Tide Water which furnished such money as was necessary to make payment in cash to other stockholders of West Coast; that West Coast purported to transfer all of its remaining assets, including oil properties, land and equipment, to Tide Water, which still holds them; that plaintiff has at all times refused and still refuses to consent to any of the foregoing matters and has not acquiesced therein; that plaintiff has received no cash or other thing of value for his stock in West Coast and is still the owner thereof; that he demands that there be distributed to him his pro rata share of all of the assets of West Coast, including his interest in the oil properties, land and equipment; that West Coast was at all times material solvent, with adequate working capital, and able to continue to operate its properties at a profit to itself and its shareholders; that the purported liquidation was not for the purpose of liquidating said properties but was for the purpose of transferring them to Tide Water for its sole benefit, to the exclusion of the other stockholders of West Coast, and for the purpose of attempting to exclude said stockholders by forcing

them to sell their interests for cash at a price fixed by Tide Water; that prior to the commencement of this action plaintiff had demanded of both defendants that there be transferred and conveyed to him his ratable interest in all of the assets of West Coast; and that this demand has been refused and the defendants refuse to distribute anything to him except cash in the sum of $75.22744 per share. The plaintiff then offered to do whatever equity should be required of him by the court and prayed that defendants be required to transfer to him his ratable proportion of all of the assets of West Coast or for such other and further relief as might be proper.

General demurrers were filed in which it was set up that the complaint does not state facts sufficient to constitute any cause of action, that it affirmatively appears from the complaint that the plaintiff is barred by laches from claiming the relief sought or any relief, and that it affirmatively appears from the complaint that the plaintiff did not oppose the plan of liquidation now complained of but has silently acquiesced therein until the defendants have changed their position, and for that reason the plaintiff is estopped from claiming any relief. In a written opinion the trial judge held that the plaintiff was guilty of laches. He then entered an order that the demurrers be sustained without leave to amend unless the plaintiff, by amendment or other proper proceeding, should "request the Court to ascertain and award judgment against said defendants for the fair cash value of plaintiff's interest in the corporate assets transferred upon dissolution" to Tide Water, such amendment or supplemental petition to be filed within 30 days. The plaintiff declined to so amend, and the court entered a judgment sustaining the demurrers without leave to amend and decreeing that the plaintiff take nothing against either defendant. From this judgment the plaintiff has appealed.

The appellant first contends that he was entitled to some relief in any event, that he was entitled at least to the amount which the respondents admittedly were willing to pay, that even on a hearing to ascertain the true value of the stock he might have received more than that amount, and that the court could not compel him to abandon his main contention that he was entitled to share in a distribution in kind by requiring him to request the court to award judgment for the fair cash value of his interest in West Coast's assets. This

contention should be upheld for two reasons. ▌ While the complaint does not directly allege that the amount offered the appellant was less than the actual value of his interest in the corporate assets we think it was sufficient, as against a general demurrer, to raise that as one of the issues to be tried, without the necessity of any amendment in that regard. The action was equitable in nature. The appellant while seeking for distribution in kind also prayed for such other and different relief as might be proper. The complaint not only alleged different values and different appraisements for the oil properties as having been fixed by others, but alleged that the value of these oil lands was speculative and uncertain. It also contained many allegations relating to the control of West Coast by the officers and agents of Tide Water, the acts of these agents for the benefit of Tide Water and against the best interests of West Coast stockholders, and the fixing of the value of the assets by agents of Tide Water. Taken altogether, we think these allegations were sufficient, as against a general demurrer, to present the issue as to whether the valuation alleged to have been placed upon appellant's stock by the agents of Tide Water was a fair one. Under the facts alleged the appellant was, to say the least, entitled to a hearing as to the fairness of the valuations thus fixed, and to have this without being compelled to waive any other issue. ▌ In the second place, the order sustaining the demurrer required the appellant to "request the court to ascertain and award judgment against said defendants for the fair cash value of plaintiff's interest in the corporate assets" as an alternative to having the demurrer sustained. If such a judgment had been requested the court would naturally have acted upon the request and this clearly required the appellant to abandon his main contention, which he could not be compelled to do unless it can be held that he had no right to a distribution in kind or, more exactly, to receive the same treatment as that accorded to the majority stockholder.

▌ The appellant's main contention is that under our statutes and decisions the plan of distribution here adopted was void and that he was entitled to distribution in kind or to be treated exactly like the majority stockholder. We so held in *In re San Joaquin L. & P. Corp.*, 52 Cal.App.2d 814 [127 P.2d 29], after reviewing the pertinent statutes. The respondents contend that our decision in that case is not controlling

here because our holding therein, that on voluntary dissolution a corporation may not carry out a plan of distribution whereby its plants and business properties are distributed to a majority stockholder while its minority stockholders are compelled to take the cash value of their holdings, was not necessary to the decision in that case. We are unable to agree with this contention. The holding in question was made in response to a point directly raised and was based upon a review and analysis of the statutes relating to the voluntary dissolution of a corporation. The respondents again argue that such a plan of distribution is permitted by these statutes, and that it is desirable under modern conditions to permit such a plan of distribution. The question as to the desirability of permitting distribution on voluntary dissolution of a corporation by transferring the main assets to certain stockholders and compelling minority stockholders to accept cash for their interests is not only debatable but it is one for the Legislature to decide. This it has done and provisions which authorize such a procedure have been omitted from our statutes. There is good reason to believe that this was intentionally done. We adhere to the views expressed in the San Joaquin case insofar as this issue is concerned.

The new question now raised is whether it can be here held that the appellant has lost his right to equal treatment with the majority stockholder in that he is barred by laches from claiming the relief sought, or any relief, and in that he is estopped since it affirmatively appears from the complaint that he has silently acquiesced in this plan of liquidation until the respondents have materially changed their position.

No third parties are here involved. Whether a mere lapse of time and failure to act would constitute laches in such a case might present a close question, but it is one which should be decided only when all of the facts are before the court. The plan here in question contemplated that there would be stockholders who would not accept the amount offered, as it provided that in such cases the amounts should be deposited in a bank and held until they were accepted. Not only was this situation thus anticipated, but the respondents admit that they were in no way misled by the acts of the appellant. The respondents further argue that we suggested in the San Joaquin case that the court might proceed under its equity powers to pay cash to certain stockholders as sug-

gested in *Jones* v. *Missouri-Edison Elec. Co.*, 144 F. 765 [75 C.C.A. 631], and that this is exactly what the court here proposed to do if the appellant would amend his complaint to that end. However, while we pointed this out in the San Joaquin case we said it came under the broad equity powers of the court where the rights of third parties were involved and where no other equitable solution was possible, and we there said: "Any possible application of the rule suggested in that case is a matter for consideration in the trial court after the full facts have been developed." Many matters were here presented which called for a hearing and a full disclosure of the facts and which should not have been determined upon demurrer.

 Assuming, but not holding, that laches and silent acquiescence might under some circumstances be sufficient to constitute a defense to appellant's main contention that this plan was void, a further consideration is that the facts necessary to show such laches and acquiescence do not appear in the complaint. The resolution adopted by the directors of West Coast on October 31, 1940, which, among other things, called a special meeting of the stockholders for November 15, 1940, directed the secretary to send a notice of this meeting to all stockholders with copies of the plan and of various other papers. While it is not alleged in the complaint that the appellant received such a notice the respondents argue that it must be assumed that he did. If this be assumed, the copy of the plan which he would have received stated that the distribution and transfer should occur on or before December 31, 1943, more than three years later. This might well have indicated to the appellant that he had considerable time in which to act, and he brought this action within one year. It neither appears when the transfer of these assets to Tide Water took place nor that the appellant knew of this transfer any considerable time before this action was filed.

Moreover, one of the announced purposes of the meeting called for November 15, 1940, was to consider and act upon the advisability of a voluntary winding-up and dissolution of the corporation. After considering that matter the stockholders might well have determined against the advisability of such a dissolution. If we assume that the appellant had notice of the meeting called for that purpose, among others, it does not appear that he was present or that he was

promptly informed as to what action was taken at that meeting, or when he acquired any such knowledge except that he knew it when this complaint was filed. For all that appears he may have first learned of the action taken at this meeting shortly before this suit was brought. Whether or not notice of such action was required under section 401(c) of the Civil Code, the appellant's knowledge of the action taken with respect to the proposed transfer and dissolution would have an important bearing on the claim of laches and acquiescence on his part.

Again, it is alleged in the complaint that West Coast offered its stockholders, aside from Tide Water, $75.22744 per share and it is further alleged that the appellant refused this offer, has taken nothing for his stock and still owns it. It is not alleged when this offer was made or when it was refused. From the nature of the plan it would seem that this must have occurred before the transfer to Tide Water was made. On its face, this would seem to have been a sufficient indication of appellant's objection as against a charge of laches based upon the claim that he had allowed the transfer to be completed without any objection upon his part.

Many matters appear which could not properly be passed upon on demurrer and which call for a hearing and a development of the full facts, and it cannot be said that the complaint is so deficient as to state no cause of action, or that the appellant is entitled to no relief. It follows that the demurrers were improperly sustained.

The judgment is reversed with directions to overrule the demurrers and permit answers to be filed.

Marks, J., and Griffin, J., concurred.