CARROLL, CHAS., Judge.
The appeals in the above styled matters were from a final decree of the circuit court in Dade County, which ordered sale of the assets of Florida Exploration Company, a Florida corporation, following dissolution of the corporation. The several appellants were defendants in the equity suit in which the decree appealed from was entered.
A number of questions were raised, but the determinative one is whether the order for sale of the assets of the dissolved corporation was error. We have concluded that it was, that under the circumstances of the case the sale of the corporation’s assets was unnecessary and improper, and that the decree must be reversed.
The facts of the case are not in dispute. Stated chronologically, they may be summarized as follows: In 1943, William G. Blanchard acquired in his name from the State of Florida an exploration contract and option for mineral lease covering some *665 seven million acres of bay bottom and offshore lands in Dade and Monroe Counties. He then assigned a three-fourths interest therein to a party who in turn assigned it to Gulf Oil Corporation. By certain litigation ending in 1949, J. L. McCord and Frank J. Pepper established that they were coadventurers with Blanchard, sharing equally in the one-fourth of the original Blanchard-State contract which remained unassigned, subject to the interest therein held by E. F. P. Brigham, N. Vernon Hawthorne and Broughton Wilkinson, hereinafter referred to as the Brigham group. At this stage the main interests were held as follows: Gulf Oil Corporation 75%-; Brigham group 3.4% (approx.); McCord and Blanchard groups 21.6% (approx.).
To avoid disputes in pursuing their objectives the parties formed Florida Exploration Company, a Florida corporation, and the McCord and Blanchard groups, but not the Brigham Group, transferred their interests in the Blanchard contract to the corporation and received its stock in return. The group heretofore referred to as the McCord group then held a majority of the stock of Florida Exploration Company, amounting to 70 shares of the authorized issue of 100 shares. The Blanchard group held the minority interest of 30 shares. The McCord majority group consisted of J. L. McCord, Frank J. Pepper, Cracker Oil Co., W. J. Ward, T. H. Anderson and W. F. McGraw. The Blanchard minority group was comprised of W. J. Blanchard, Louise Blanchard (since deceased, and interest held by Blanchard as administrator), J. L. Peters, Mary Peters, M. Lewis Hall and Paul C. Taylor, individually and as trustee.
Thus these holdings of the McCord group and the Blanchard group, amounting to 21.6% (approx.) of the entire Blanchard contract, were transferred to Florida Exploration Company and constituted the assets of that corporation.
Although the McCord group represented a 70% majority stock ownership and the Blanchard group had a 30% minority stock holding in Florida Exploration Company, an agreement was entered into by the stockholders, on February 15, 1950, for the McCord group and the Blanchard group to have equal voice and control of the business of the corporation, through equal representation on a six-man board of directors, for a period of ten years. That contract, signed by McCord, Pepper, Anderson, Blanchard, Hall and Taylor, contained the following pertinent recitals and provisions:
“Whereas all of the stockholders of this corporation have heretofore been engaged in various suits and actions against one another extending over a long period of time, and the parties hereto have entered into a settlement agreement, dismissing all pending suits, releasing all claims and demands which each may have against the other or any of them, and various properties involved in said litigation having been transferred to this corporation, and the undersigned being desirous that neither faction or group heretofore involved in said litigation shall have exclusive power and control in the management and direction of the affairs of this corporation, and both groups being desirous that management and control hereof be shared equally by both groups and factions now therefore it is
“Mutually Understood and Agreed that the six (6) directors of the said Florida Exploration Company as provided in the By-Laws of said corporation shall be re-elected annually until they have served a term of ten (10) years, and the said directors shall consist of the following persons who shall hold said office as directors for ten (10) annual, consecutive terms, that is to say, then (10) years in all, or until their successors are elected *666 and qualified as hereinafter provided: 1. J. L. McCord, 2. Frank J. Pepper, 3. Thomas H. Anderson, 4. William G. Blanchard, 5. M. Lewis Hall, 6. Paul Taylor.
“It is further understood and agreed that all of the above directors are mutually acceptable to all of the undersigned stockholders, and it is understood that the said directors shall devote their talents and efforts toward making the said Florida Exploration Company a financially sound and prosperous business enterprise for the mutual advantage of all concerned.
******
“It is further understood and agreed that no change in the membership, number, or term of office of said Board of Directors shall be made for the duration of said ten (10) year period unless otherwise expressly provided herein.
“It is further understood and agreed that this contract shall be binding on all the transferees of the undersigned stockholders and their heirs, administrators or executors, and it is further agreed that this contract shall be spread upon the minutes of the first stockholders’ meeting, so that the same may he notice to the world of the provisions hereof.”
Thereafter the stockholders of Florida Exploration Company received an offer from Commonwealth Oil Company, an oil exploration corporation, to exchange the stock they held in the former corporation for stock in the latter corporation at the rate of 800 shares of Commonwealth Oil Company stock for one share of Florida Exploration Company stock. The McCord majority group accepted the offered stock exchange. One member of the Blanchard minority group, owning 2 shares, of stock, took stock in Commonwealth Oil Company, The remaining Blanchard group, holding 28 shares of the Florida Exploration Company stock refused to give up their stock in exchange for Commonwealth Oil Company stock. The result was that Commonwealth, succeeding to stockholders’ rights; of the McCord majority group became holder of 72 of the outstanding 100 shares of the stock of Florida Exploration Company..
Exercising its 72-28 majority stock holding, the majority group, through Commonwealth, sought to force the Blanchard' minority group into a merger with Commonwealth. The court prevented the merger because the agreement between the two-groups of stockholders of Florida Exploration Company, for joint control and continued operation for ten years, made in-1950, precluded such coercive actions by the majority stockholders. See Blanchard v. Commonwealth Oil Company, Fla. 1956, 91 So.2d 803, where the Supreme Court, referring to the agreement of February 15, 1950, said, “that by reason of the settlement agreement and conveyance of the lease to the corporation, a trust was imposed on the directors to handle and conduct the affairs of the corporation for the benefit of the stockholders which could not be changed without unanimous consent of their beneficiaries.”
Thereafter no action was taken by the directors with reference to the corporation’s business. In December of 1957 the secretary of Florida Exploration Company,, a member of the McCord majority group' and one of the directors, received official notice that the corporation was delinquent in payment of its annual capital stock tax.[1] The tax was not paid, and the corporation was dissolved by proclamation of the Governor for that reason, but not before suit had been filed by Commonwealth Oil Company, as a stockholder of Florida Exploration Company, seeking dissolution of the *667 latter corporation under 608.28, Fla.Stat., F.S.A.[2]
Whether Commonwealth, as successor to the interests of stockholders who had contracted to handle the business of the corporation on a joint consent basis, could use the refusal of its appointed directors to do ■so, as a basis for claiming a deadlock in management, and seek dissolution under | 608.28, Fla.Stat., F.S.A., is a question which we need not decide, because during the pendency of the suit the corporation was dissolved by operation of law as noted above.
The chancellor accepted jurisdiction and appointed a receiver who then, with the ■court’s approval, made an exploration contract for a well to he drilled. That was a piece of business on which the corporation needed prompt action in order not to lose ■certain option rights. The corporation then (after the making of the contract) had no further business which required attention, and it had no creditors.
On dissolution, the Blanchard minority group wanted the assets of the Florida Exploration Company distributed to them in kind. That is, they desired to receive back their respective fractional interests in the original Blanchard lease subject to' the development contract made by the receiver for the corporation — similar to the fractional interests therein as held by the members of the Brigham group.
The complaint, by which Commonwealth as a stockholder sought dissolution, did not pray for a sale of the assets. The prayer was for distribution thereof, saying “that the assets of Florida Exploration Company other than these subject tO‘ the proposed contract with Gulf Oil Corporation, be distributed among the shareholders of Florida Exploration Company, as well as to the individual defendants [Brigham group] who have an undivided interest in said lands who did not accept stock in Florida Exploration Company.”
The chancellor found that a basis had been established for dissolution under the deadlock statute, § 608.28, Fla.Stat., F.S.A., but noted that the corporation already had been dissolved by operation of law for nonpayment of capital stock tax. Then, for no sufficient reason shown on the record, the chancellor ordered his receiver to sell out the assets of the dissolved corporation at public auction sale. The corporation’s assets consisted only of its interest in the Blanchard lease amounting to 21.6% thereof, with the benefit of the existing contracts for exploration.
On the receiver’s sale, Commonwealth Oil Company (owning 72% of the stock of Florida Exploration Company), bought in the “assets” by a bid which called for Commonwealth to pay $19,999.86 to the Blanchard minority group for their interest. It should be noted that the ultimate outcome of the purchase by Commonwealth of the assets of Florida Exploration Company on the receiver’s sale was substantially the same, dollarwise, as that which would have resulted from the earlier attempted merger.[3]
*668 The appellants’ contention that the corporation should not have been dissolved under the deadlock statute was not applicable, because the corporation was dissolved during the pendency of the case for failure to pay its corporate stock tax, and the court acted on that dissolution which had occurred by operation of law. Therefore, the order appointing the receiver and the decree for dissolution of the corporation were proper. But the point with which appellants were more concerned, and which was argued in the trial court and reargued strenuously here, was their contention that there was no basis in law or fact to require the chancellor, over their objections and to their loss, to order a sale, rather than to order that the property of the dissolved corporation be distributed among its stockholders.
Appellants argued also that the court attempted to partition the property of the corporation, without pleadings for partition and without following requisite statutory procedure; and that in any event, if partitioned, under the statute, the nature of the case compelled distribution and would not have supported a finding of non-divisibility of the property; that there was no such finding of nondivisibility though it was essential that there be such a finding before an order could be made to sell out the assets. Those arguments of appellants with reference to partition are sound. See §§ 66.01-66.09, Fla.Stat., F.S.A. Thus, where the court on dissolution of a corporation orders sale of the assets as a means of liquidation, and refers to it as “partition”, that word is used loosely as a synonym for liquidation distribution, and such a sale is not a partition under the statute. Appellee’s brief presents no reasons in support of the court’s decree for sale of the “assets”, but appears to assume incorrectly that a dissolution necessarily calls for a sale of the corporation’s assets.
Whether the dissolution which was the basis for the liquidation order in this case was decreed by the court under the corporation deadlock statute, § 608.28, Fla. Stat., F.S.A., or resulted from failure to pay corporate capital stock tax, under § 608.36, Fla.Stat., F.S.A., the distribution was required to be made under the provisions of § 608.29. That section of the statute provides that the directors as trustees, or the receiver if one is appointed, shall pay the debts of the corporation and if any surplus monies are left over, pay those ratably to the stockholders. It then provides that the trustees or receiver “shall make final distribution of the assets within such time and in such manner as the court may determine in the order of appointment or in subsequent proceedings.”
*669 The statute (§ 608.29) expressly confers on the court the power to order “final distribution of assets within such time and in such manner as the court may determine.” The discretion thus derived by the court under that broad power to order sale of the assets as a preliminary to distribution must be exercised with due regard to the nature of the assets, the circumstances of the parties and the effect on the rights and interests of the distrib-utees. See In re San Joaquin Light & Power Corporation, 52 Cal.App.2d 814, 127 P.2d 29; Zimmerman v. Tide Water Associated Oil Co., 61 Cal.App.2d 585, 143 P.2d 409; Baltimore & O. R. Co. v. Cannon, 72 Md. 493, 20 A. 123; 19 C.J.S. Corporations § 1524 a; 75 C.J.S. Receivers § 221. Cf. Lebold v. Inland Steel Co., 7 Cir., 1936, 82 F.2d 351; Id., 7 Cir., 1941, 125 F.2d 369.
The assets of Florida Exploration Company constituted 21.6% of the original Blanchard mineral lease contract, implemented by the contract for exploration with Gulf Oil Corporation made through the receiver. The Florida Exploration Company had no business to transact. The Blanchard minority group, which opposed the sale and sought distribution in kind, held interests which were of speculative value. For purposes of a public auction sale the value was not readily susceptible of ascertainment, but the Blanchard group valued it highly. On such a sale the minority group was forced either to buy out the majority, or accept the value set by the latter, which they viewed as inadequate. Moreover, there was no necessity for the sale. See 16 Fletcher, Corporations, § 8163 (rev. vol. 1942). The stockholders, with little change, were the same persons who had transferred their fractional interests in the Blanchard contract to the corporation at its outset. There was no reason why the fractional interests in the oil lease contract which they separately owned before the formation of the corporation could not be so held and owned by them after its dissolution. “It is clear, of course, that a cotenancy can exist in gas and oil rights.” 24 Am.Jur., Gas and Oil, § 19. The Brigham group so owned their fractional interests during all the time involved.
Under those circumstances, where the property to be distributed was divisible and distributable in kind, the court should not have ordered the sale of the assets over the objections of the Blanchard minority group who contended they would suffer loss thereby. The rule we have stated applies also on partition, to which the circumstances here are analogous. The partition statute authorizes sale only when it is found that the property involved may not be distributed in kind “without great. prejudice to the owners of the same.” Section 66.07, Fla.Stat., F.S.A. This subject of a sale of property in lieu of partition in kind is discussed in 24 Fla.Jur., Partition, § 65, as follows:
“At both common law and in equity, in proceedings for the partition of land the cotenants were entitled to partition in kind if they so demanded, regardless of the difficulty or inconvenience thereof. Only by the consent of the parties did the courts have power to order a sale of the land and a division of the proceeds among the common owners. However, the manifest hardship arising from the division of property of an indivisible nature is today, as a general rule, almost universally avoided by statutory provisions which give to a person entitled to partition the right to have the property sold, if it is so situated that a partition thereof cannot be made or if it would be manifestly unjust to the parties if the property were partitioned, instead of being sold. This process whereby the land may be sold for a division of the proceeds among the co-tenants is a substitute for partition in kind; the proceeds of the sale take the place of the property, and the respective rights of the cotenants to *670 the money are in proportion to the undivided interest of each in the land.
“In this state, whenever the trial court determines that the property involved in partition proceedings is incapable of division in kind, the court is required by statute to order the property sold, so that it can be converted into money and a division of the proceeds made to the respective parties entitled thereto. * * * ”
The form of dissolution imposed by the chancellor on these parties, by ordering a sale of the assets and distribution in cash rather than distributing or returning the assets to the respective parties in kind, had definite elements of unfairness to those parties making up the Blanchard minority group, and in the absence of any showing of necessity for sale the demand of that minority for distribution in kind should not have been refused. Cf. Shrage v. Bridgeport Oil Co., 31 Del.Ch. 305, 71 A.2d 882.
Accordingly the decree is affirmed in its holding for the dissolution of the corporation, but is reversed for ordering sale of the assets of Florida Exploration Company, and the cause is remanded with directions to the trial court to set aside the receiver’s sale of the assets of the corporation, and to order distribution of the assets in kind to the stockholders of the corporation.
Affirmed in part and reversed in part and remanded with directions.
HORTON, C. J., and PEARSON, J., concur.

. By § 608.33, Fla.Stat., F.S.A., a corporation must pay annually a capital stock tax. Failure to pay the tax will re-suit in dissolution of the corporation. § 608.36 id.

. That statute provides inter alia for dissolution where the total stock voting power is evenly divided into two independent ownerships or interests, and the number of directors is even and equally divided respecting the management of the corporation, with one-half of the directors and ownership favoring one course, and the other half favoring a different course.

. This is established by a written statement of the secretary of Commonwealth Oil Company filed at the receiver’s sale, explaining the purpose of Commonwealth in buying in the assets of Florida Exploration Company, and which statement contained the following:
“* * * a commitment to give 800 [shares of Commonwealth Oil Company stock] for each share of Florida Exploration Company exchanged was made by its Board of Directors and officers prior to the present management of Commonwealth Oil Company taking over. The present management of Common *668 wealth Oil Company still respects this commitment.
“The price bid for the remaining assets of Florida Exploration Company represents the market price of Commonwealth Oil Company at 800 to 1, less however, an amount it has cost Commonwealth Oil Company in actual cash so as to enable it to deal with its remaining 1.6% of Florida Exploration Company’s original assets.
“In spite of the repeatedly asserted but never established claims of the defendants to this law suit that Commonwealth Oil Company had sought to defraud them of their interest in the subject matter of this suit and in spite of the fact that the Oil Company questions the value of such remaining assets, it is submitting a bid to the Receiver for such assets in the amount first above mentioned which, when divided among the defendants and the plaintiff in the proportion in which they own stock in the company, will be substantially close to the amount which such defendants would have received upon a fair exchange at the time of the first offer in the present value of Commonwealth stock, less the cost which Commonwealth Oil Company has been put to as above indicated. All other stockholders of Florida Exploration Company accepted this proposal and the plaintiff can find no justification for altering the situation with respect to this minority group who have done nothing to advance their common interest and who have repeatedly obstructed a peaceful accomplishment of the company’s proper objectives.”